449 So.2d 960 (1984)
Donald REAM and Curtis Ream, Appellants,
v.
STATE of Florida, Appellee.
No. 83-1477.
District Court of Appeal of Florida, Fourth District.
May 9, 1984.
*961 Bernard Berman, Fort Lauderdale, for appellants.
Jim Smith, Atty. Gen., Tallahassee, and Max Rudmann, Asst. Atty. Gen., West Palm Beach, for appellee.
DOWNEY, Judge.
This is an appeal by codefendants from an order denying their Florida Rule of Criminal Procedure 3.850 motions for post conviction relief after an evidentiary hearing. In their motions for post conviction relief defendants contended that their lawyers (one succeeded the other) advised them he had obtained a plea bargain or agreement for them to plead guilty to the charges, abandon any claim to an airplane and truck involved in the criminal episode, cooperate with law enforcement by informing on other persons involved in drug trafficking, in return for three years' probation. This cause is here for the second time after a remand to permit the defendants, in view of the cloudy record, to present evidence to support their motions. Ream v. State, 426 So.2d 1310 (Fla. 4th DCA 1983).
The cloudy record referred to in our earlier opinion showed that the State charged defendants, who are brothers, with trafficking in marijuana. Pleas of guilty were entered sometime prior to March 3, 1982. On March 8, 1982, defendants appeared for sentencing, part of which was done in camera. The court sealed the transcript of that hearing to protect the defendants and ordered it unsealed for inclusion in the present record on appeal. At that hearing a customs official outlined for the court how the defendants had cooperated with the authorities by informing on various persons involved in illegal drug traffic leading to various arrests. Thereafter, defense counsel urged probation because of the defendants' cooperation. The prosecutor then said he wanted, in the presence of the defendants, to go over what his understanding of the agreement was. He said he had received cooperation, but not as much as he had hoped, and that the State could not openly recommend probation. The State would not oppose probation if the court felt it should be given and that the State was willing to go along with probation. The court announced it was convinced there was cooperation. It then said it would sentence the defendants in open court, and that because of their cooperation and the information gleaned from the PSI, it was going to cut their sentences to half what it would otherwise have been. After the in camera session, appellants were each sentenced in open court to three years in prison and a $10,000 fine.
At the evidentiary hearing held on remand both defendants testified that both of their lawyers had advised them to accept the State's offer of three years' probation in return for entry of guilty pleas, abandonment of an airplane and truck, and cooperation with law enforcement. At this evidentiary hearing the State offered no evidence whatsoever. Nonetheless, the trial court denied the motion, and this appeal ensued.
We are unable to determine any basis upon which the motion could be denied. The only testimony before the trial court on this motion was appellants'. They say they pleaded guilty because they were assured by both their lawyers that an agreement had been reached with the State for three years' probation on the conditions referred to above. There is no contradicting testimony. Nor does the record contain any other evidence to contradict that contention. A guilty plea induced by a promise of defense counsel that is not kept is involuntary. Cooley v. State, 245 So.2d 679 (Fla. 4th DCA 1971).
We note in passing that the colloquy between the judge and appellants when their plea was taken is inadequate to meet the requirements for determination of voluntariness. Such inadequacy is not enough to permit withdrawal of the defendants' guilty pleas had the State proved the voluntariness and intelligence of the pleas. See, e.g., United States v. Pricepaul, 540 F.2d 417 (9th Cir.1976); Sena v. Romero, 617 F.2d 579 (10th Cir.1980). Thus, because of *962 the inadequate interrogation at the plea hearing the burden was on the State at the Rule 3.850 evidentiary hearing to show the nature of that agreement if it differed from appellants' version.
In view of the foregoing, we reverse the order appealed from and remand the cause with directions to vacate the judgment and sentence and allow appellants to withdraw their pleas. Cf. Rimanich v. United States, 357 F.2d 537 (5th Cir.1966).
REVERSED AND REMANDED, with directions.
ANSTEAD, C.J., concurs.
GLICKSTEIN, J., concurs specially with opinion.
GLICKSTEIN, Judge, concurring specially.
The Preamble of the Integration Rule of The Florida Bar enunciates principles adopted by the Supreme Court to effectuate the following goals: (1) To inculcate in the members the principles of duty and service to the public, (2) To improve the administration of justice, and (3) To advance the science of jurisprudence. This opinion addresses the latter two goals in relation to the case at hand. My primary observation is that material inefficiency during the trial proceedings on the part of one or more of the principal players (a) precludes the administration of justice at the trial level and (b) transforms appellate judges, whose function is to make and analyze value judgments, into janitors with robes. The instant case, in my subjective opinion, reflects inefficiency that has complicated a facially strong case which otherwise would have worked itself through the system quickly and effectively. The result is that we have spent our time with a broom and pan instead of a quill.
Appellate judges were not created to cure inefficiency. Had they been, there would be no reason for those involved in trial proceedings to be efficient, because an infinite number of appellate janitors could be appointed. I perceive our role as more positive, more creative than cleaning up the results of the lack of surgical attention. If anything, ideally there should be fewer, not more, appellate judges, were there greater attention by all participants at the initial judicial stage. At a recent oral argument session, the writer perceived all of the criminal appeals to turn on lack of attention at the trial level by the participants. In short, we here should be resolving questions of law  however subjectively, because of our diverse value judgments  rather than cleaning up clouds of dust.
To be more specific, the probable cause affidavit in this case recites that the two defendant brothers were caught, red-handed, in the smuggling of marijuana into an airstrip in Okeechobee County. The information reflects that they were then charged with trafficking in cannabis (in excess of 100 pounds) in violation of section 893.135, Florida Statutes (1981), which carries a mandatory minimum term of imprisonment of three years and a fine of $25,000.
Defendants' initial attorney, Mr. Teller, filed an unsuccessful motion to dismiss and waiver of speedy trial. Mr. Teller retired in June 1981 and other counsel assumed the defense and filed motions for continuance.
We are led to believe that at some unknown date, an attorney for the two defendants, without his clients, met to bargain his clients' fates with representatives of the state attorney's office, the latter of whom presumably were expected to be meticulous in any bargains involving parties ostensibly nailed to the proverbial wall. We have no idea what actually occurred, when, and among whom, because there is no sworn testimony, affidavit or stipulation from the state to tell us.[1] It was apparently the wish of defendants' attorney that whatever agreement was made, it would *963 not be reduced to writing, to which the state's representatives apparently agreed. Hardly a word is mentioned about one of the two defendants being represented in this unsworn record as to any "deal" that the other defendant, Donald Ream, could deliver a substantial number of smugglers. Apparently, Donald Ream delivered a few smugglers and helped in the confiscation of an airplane.[2] There is an indication, completely unsworn, that on the second of his cooperative stunts, he flew to Jamaica at some personal risk.
As the majority opinion points out, what occurred thereafter in the proceedings was contrary to recognized procedures, all of which has occasioned tapping the taxpayers' limited resources needlessly in two reruns to date and a third as a result of this decision. Some people apparently share the twin beliefs that apathy makes sense because we all live forever, and inefficiency is acceptable because the taxpayers' pockets are bottomless.
NOTES
[1] Even the statements of the customs agent at the time of defendants' sentencing were unsworn.
[2] Unlike The Dirty Dozen, the fictionalized American soldiers given conditional amnesty from their fate pending their performance against the enemy, the Reams were imprisoned after their ostensible assistance, and remain so.